**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 13-cv-01347-REB-KMT

MICHAEL RILEY,

    Plaintiff,

v.

AETNA LIFE INSURANCE COMPANY, a Connecticut corporation,

    Defendant.

## ORDER AFFIRMING AGENCY ACTION

**Blackburn, J.**

This matter is before me on **Plaintiff's Opening Brief** [#29],[1] filed January 12, 2014. In this action, plaintiff seeks review of defendant's decision to terminate his long-term disability benefits. I affirm that decision.

### I. JURISDICTION

I have jurisdiction of this matter pursuant to 29 U.S.C. § 1132(e) (authority to review denial of benefits under an ERISA plan).

### II. STANDARD OF REVIEW

There is no dispute in this case that defendant's long-term disability plan is an ERISA plan. Moreover, the parties agree that defendant's decision to terminate plaintiff's benefits under the plan may be set aside only if it was arbitrary and capricious. *See Cardoza v. United of Omaha Life Insurance Co.*, 708 F.3d 1196, 1201 (10th Cir.

---

[1] "[#29]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

2013).[2]  Under this standard, "review is limited to determining whether the interpretation of the plan was reasonable and made in good faith."  **LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Insurance Plan**, 605 F.3d 789, 796 (10th Cir. 2010) (citation and internal quotation marks omitted).  The administrator's decision will be affirmed "so long as it is predicated on a reasoned basis."  **Adamson v. Unum Life Insurance Co. of America**, 455 F.3d 1209, 1212 (10th Cir. 2006).  **See also Kimber v. Thiokol Corp.**, 196 F.3d 1092, 1098 (10th Cir. 1999) (administrator's decision must be upheld "unless it is not grounded on *any* reasonable basis") (citations and internal quotation marks omitted; emphasis in original).

"Certain indicia of an arbitrary and capricious denial of benefits include lack of substantial evidence, mistake of law, bad faith, and conflict of interest by the fiduciary."  **Graham v. Hartford Life & Accident Insurance Co.**, 589 F.3d 1345, 1357 (10th Cir. 2009), **cert. denied**, 130 S.Ct. 3356 (2010) (citation and internal quotation marks omitted).  Substantial evidence is defined as "more than a scintilla but less than a preponderance."  **Sandoval v. Aetna Life & Casualty Insurance Co.**, 967 F.2d 377,

---

[2] This standard pertains because the terms of the plan grant defendant, as the plan administrator, the authority to determine a participant's eligibility for benefits.  (**See** Tr. 00005.)  **See Cardoza**, 708 F.3d at 1201.  As both the claims administrator and the payor of benefits, defendant operates under an inherent conflict of interest, which the court "must weigh . . . 'as a factor in determining whether there is an abuse of discretion,' according it more or less weight depending on its seriousness."  **Murphy v. Deloitte & Touche Group Insurance Plan**, 619 F.3d 1151, 1158 n.1 (10th Cir. 2010) (quoting **Metro Life Insurance Co. v. Glenn**, 554 U.S. 105, 115, 128 S.Ct. 2343, 2350, 171 L.Ed.2d 299 (2008)).  Although plaintiff points raises this conflict of interest, nothing in his arguments suggest circumstances that support an inference that the conflict influenced defendant's decision in this instance.  **See Hancock v. Metropolitan Life Insurance Co.**, 590 F.3d 1141, 1155 (10th Cir. 2009) ("A conflict is more important when circumstances suggest a higher likelihood that it affected the benefits decision, but less so when the conflicted party has taken active steps to reduce potential bias and to promote accuracy.") (citation and internal quotation marks omitted).  **See also Graham v. Hartford Life & Accident Insurance Co.**, 589 F.3d 1345, 1358 (10th Cir .2009) (seriousness of conflict of interest is "proportionate to the likelihood that the conflict affected the benefits decision"), **cert. denied**, 130 S.Ct. 3356 (2010).

382 (10th Cir. 1992).  Stated differently, substantial evidence "is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the decisionmaker."  *Id.* (citations and internal quotation marks omitted).  Thus,

> [u]nder the arbitrary and capricious standard of review, [defendant's] decision need not be the only logical decision nor even the best decision.  Rather, the decision need only be sufficiently supported by facts known to [defendant] to counter a claim that the decision was arbitrary or capricious.

*Williams v. Metropolitan Life Insurance Co.*, 2011 WL 97137 at *3 (D. Colo. Jan. 11, 2011) (Blackburn, J.), *aff'd*, 459 Fed. Appx. 719 (10th Cir. Feb. 7, 2012).

### III. ANALYSIS

Plaintiff was employed by Sprint Nextel as an engineer and manager.  Sprint employees are entitled to disability benefits under an ERISA plan, of which defendant is the administrator.  The plan provides two different tests of disability, depending on how long the disability has lasted:

> From the date that you first become disabled and until Monthly Benefits are payable for 24 months, you will be deemed to be disabled on any day if:
>
> • you are not able to perform the material duties of your own occupation solely because of: disease or injury; and
>
> • your work earnings are 60% or less of your adjusted predisability earnings.
>
> After the first 24 months that any Monthly Benefit is payable during a period of disability, you will be deemed to be disabled on any day if you are not able to work at *any reasonable occupation* solely because of:
>
> • disease; or
> • injury.

(Tr. 00004 (emphases added)).  Thus, while an employee may be found disabled during the first 24 months of disability if he cannot perform his own job, thereafter he will be entitled to benefits only if it is determined that he is unable to perform *any* reasonable occupation.  "Any reasonable occupation" is defined by the plan as "any gainful activity for which you are; or may reasonably become; fitted by:  education; training; or experience; and which results in; or can be expected to result in; an income of more than 60% of your adjusted predisability earnings."  (Tr. 00018).

In April 2009, plaintiff applied for short-term disability benefits under Sprint's employee benefit plan, of which defendant is the administrator.  Plaintiff claimed benefits under the plan based on diagnoses of atrial fibrillation, heart failure, non-ischemic dilated cardiomyopathy, and depression.  (*See* Tr. 01491-01492, 01514, 01539, 01558-01559.)  Plaintiff's claim for short-term benefits was approved based on a conclusion that it was "reasonable to believe [plaintiff was] precluded from performing the material duties of his own job."  (Tr. 01601.)  That August, plaintiff applied for long-term disability benefits (Tr. 00125), which defendant approved, finding again that plaintiff could not perform his own job (Tr. 00159).

As the initial 24-month period of long-term disability benefits drew to a close, defendant repeatedly informed plaintiff of the impending change in the applicable definition of disability and requested additional records.  (*See* Tr. 00199-00200, 00244-00245, 00272-00273, 00278, 00305-00306, 00504, 00576, 00904.)[3]  In response,

---

[3] At this same time, plaintiff was awarded disability benefits by the Social Security Administration. (*See* Tr. 000264-00271.)  This decision is in no way binding on defendant or determinative of its decision whether benefits are available under the plan.  *See Smith v. Metropolitan Life Insurance Co.*, 344 F.Supp.2d 696, 703 (D. Colo. 2004).

plaintiff submitted, *inter alia*, a statement from his treating physician, Dr. Alfred Nash. That statement, however, was internally inconsistent. On one page, Dr. Nash indicated that, despite "marked" limitations, plaintiff was capable of sedentary work and that his mental impairments were only "slight," permitting him to "function in most stress situations and engage in most interpersonal relationships." (Tr. 00316.) On a subsequent page, however, Dr. Nash stated that, although plaintiff could "occasionally" walk, sit, and stand,[4] the number of hours he could work in a day was "none." (Tr. 00319.)

Given the conflicting nature of Dr. Nash's opinions, defendant referred plaintiff for an independent medical examination ("IME"). (Tr. 00614, 00620.) Dr. Douglas Scott performed that examination on November 8, 2011. (*See* Tr. 00331-00336.) Dr. Scott agreed with plaintiff's relevant diagnoses, but concluded that plaintiff could "work in a sedentary physical demand level job in a[n] eight hour work day." (Tr. 00336.) Defendant subsequently forwarded a copy of Dr. Scott's report to Dr. Nash, asking whether he concurred with Dr. Scott's opinion that plaintiff was capable of sedentary work for a full 8-hour day. Dr. Nash indicated his agreement with that opinion. (Tr. 00346.)

At the same time, defendant obtained a Transferrable Skills Analysis, pursuant to which a consultant identified five occupations that were deemed appropriate for plaintiff based on his capacities and skills. (*See* Tr. 00740-00743.) That report then was provided to another consultant, who performed a Labor Market Analysis and found that

---

[4] "Occasionally" was specifically defined as "1-33% or .5-2.5 hrs." (Tr. 00319.)

5

those five occupations existed within the labor market in plaintiff's immediate area and that the reasonable hourly wage for such jobs exceeded 60% of plaintiff's adjusted predisability income, as required under the plan. (Tr. 00745-00750.)[5]  Thus finding that plaintiff did not meet the new definition of disability under the plan, defendant terminated plaintiff's benefits.  (Tr. 00339-00341.)

Plaintiff subsequently filed an administrative appeal.  In support of the appeal, plaintiff's attorney suggested that Dr. Nash and plaintiff's "treating therapist"[6] were of the opinion that plaintiff "cannot function in any of the listed jobs" identified in the Transferable Skills Analysis because they were "high stress jobs which are not recommended by [plaintiff's] treatment providers."  (Tr. 000357-00358.)  In support, Dr. Nash submitted a brief statement in which he concluded that plaintiff "would not be able to function as an effective Projects Manager," one of the five identified alternative jobs. (Tr. 00359.)

Thereafter, defendant sent relevant records to two independent physicians.  (*See* Tr. 00242, 007762, 00766.)  Based on his review,[7] cardiologist Dr. Ira Feldman

---

[5]  In his reply brief, plaintiff for the first time argues that there was not substantial evidence to support defendant's determination that the alternative jobs identified met the definition of "any reasonable occupation" as set forth in the plan, i.e., that they resulted in an income of more than 60% of adjusted predisability income.  In general, the court is neither required nor inclined to address issues raised for the first time in a reply brief, and any relief premised on this theory could have been denied on that basis alone.  *See Netwuote, Inc. v. Byrd*, 2009 WL 902437 at *10 (D. Colo. April 1, 200) ("Arguments not raised in an opening brief are deemed abandoned and waived.") (citation and internal quotation marks omitted).  However, defendant requested and was granted leave to file a surreply to address this precise issue.  As set forth in the surreply, the evidence plainly belies any suggestion that the alternative jobs do not meet the relevant threshold.  (*See* Tr. 00018, 00135, 00740-00743.)

[6]  It is unclear from the record to whom counsel referred, and plaintiff has failed to identify a report or other record from a psychiatrist, psychologist, or other therapist which supports the assertions of counsel's letter.

[7]  Dr. Feldman attempted on at least two occasions to contact Dr. Nash for a peer-to-peer consultation, but his attempts were unsuccessful.  (Tr. 00763.)

concluded that "[t]here is no reason that [plaintiff] . . . cannot perform sedentary activity," and that he could "work eight hours a day at sedentary work . . . as long as [he] does not have to lift anything more than five to ten pounds."  (Tr. 00763.)  Similarly, Dr. Elana Mendelssohn, a psychologist, noting the "relatively limited information" related to plaintiff's depression – including the fact there "no documentation was submitted from a treating mental health provider" and that "[a] document from August of 2011 noted that [plaintiff's] chronic major depression disorder was in remission (Tr. 00766) – concluded that "[n]o restrictions or limitations would be considered appropriate" from a psychological standpoint (Tr. 00767).  Defendant accordingly upheld its original decision to terminate plaintiff's benefits.  (*See* Tr. 00439-441.)  This lawsuit followed.

       Plaintiff here claims that defendant's decision to terminate his long-term disability benefits was not supported by substantial evidence insofar as the finding that plaintiff could perform sedentary work does not adequately account for plaintiff's ability to handle the stress demands of the alternative jobs identified by defendant as within his capabilities.  In this regard, plaintiff argues that the five jobs all involved managerial responsibilities and thus "include a potential for high stress."  (**Reply Br.** at 3.)

       Setting aside the fact that plaintiff's assertion regarding the stress associated with any of the alternative jobs is wholly conclusory and utterly unsubstantiated, there are at least two additional problems with plaintiff's arguments.  First, they are based on little more than the largely unsupported assertions of plaintiff's counsel, which in turn

are premised on the conclusory (and contradictory) statements of Dr. Nash.[8]  This evidence itself is insufficiently substantial to justify a conclusion that plaintiff cannot handle work-related stress.

Second, the opinion of Dr. Mendelssohn is more than adequate to support defendant's decision to terminate benefits.  Plaintiff does not dispute that he can perform the physical demands of sedentary work, and indeed, Dr. Nash himself confirmed that conclusion.  (*See* Tr. 00346.)[9]  Thus is assertion that plaintiff cannot handle the stress of the alternative jobs identified must rest, if at all, on the supposed psychological demands of those jobs.  Even assuming *arguendo* that these jobs are indeed "high stress," Dr. Mendelssohn's conclusion that the record justifies no psychologically-related limitations on plaintiff's ability to work is more than sufficient to support defendant's conclusion that plaintiff did not meet the enhanced definition of disability set forth in the plan.  Its decision to deny benefits therefore was supported by substantial evidence.

## IV.  ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1.  That the decision to terminate plaintiff's long-term disability benefits is

---

[8]  Defendant here is not constrained to afford any particular weight to the opinion of a treating physician, as, for example, the Commissioner of Social Security would be in reviewing an application for disability insurance benefits under Title II of the Social Security Act.  *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003).

[9]  A definition of "sedentary work" was included with the form defendant provided to Dr. Nash requesting his opinion as to plaintiff's functional abilities.  (*See* Tr. 00346 (noting that sedentary work comprised "[e]xerting up to 10 pounds of force occasionally (1/3 of the time) to lift, carry, push, pull, or otherwise move objects, including the human body.  May involve walking or standing for brief periods of time").)

affirmed;

      2.  That judgment shall enter in favor of defendant on all claims for relief asserted in the **Complaint for Damages** [#1], filed May 23, 2013;

      3.  That the defendant is awarded its costs to be taxed by the clerk of the court pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1; and

      4.  That this case is closed.

Dated April 13, 2015, at Denver, Colorado.

                                          **BY THE COURT:**

                                          */s/ Robert E. Blackburn*
                                          Robert E. Blackburn
                                          United States District Judge